**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JOHN WHITE,

                                        Plaintiff,

                - v -                                                    Civ. No. 9:12-CV-1775
                                                                                (NAM/DJS)
PATRICIA L. WILLIAMS, *et al.*,

                                        Defendants.

**APPEARANCES:**                                        **OF COUNSEL:**

JOHN H. WHITE
Plaintiff, *Pro Se*
08-A-3366
Southport Correctional Facility
P.O. Box 2000
Pine City, New York 14871

HON. ERIC T. SCHNEIDERMAN                        DENISE P. BUCKLEY, ESQ.
Attorney General of the State of New York        JOHN F. MOORE, ESQ.
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff John White brings this civil rights action pursuant to 42 U.S.C. § 1983. Dkt.

No. 1, Compl. After an initial review by the Honorable Norman A. Mordue, now-Senior United

States District Judge, the Court allowed the following seven claims to proceed to discovery:

Cause of Action                                                         Defendants

1.      An Eighth Amendment claim for failure                Thompson, Nichols,
        to protect Plaintiff from an assault by Plaintiff's   and Rock
        cellmate (Francis) on January 7, 2010.

| | | |
|---|---|---|
| 2. | A claim for excessive force arising out of an incident on June 8, 2010 where Plaintiff alleges that he was hit in the mouth and slammed up against the wall. | Willett |
| 3. | A claim that certain Defendants attempted to incite inmate violence against Plaintiff. | Dishaw, Williams, King, and MacWilliams |
| 4. | A claim that Plaintiff was wrongfully denied protective custody. | Oey, Rock, Greenizen, Otis, Nason, Yaddow, Uhler, Lira, Zerniak, and DOCCS[1] Director of Classification and Movement |
| 5. | An Eighth Amendment claim for failure to protect Plaintiff from an attack by Plaintiff's cellmate (Crossdale) on June 11, 2012. | Demers, C. Smith, King, and Nason |
| 6. | A medical indifference claim for failure to treat the injuries sustained in the June 11, 2012 assault. | RN Marlowe |
| 7. | A failure to supervise claim. | Rock, Uhler, Zerniak, Otis, Fischer, and Roy |

Dkt. No. 33 at pp. 6-36.

Currently pending before this Court is Defendants' Motion for Summary Judgment, filed pursuant to Federal Rule of Civil Procedure 56 (a). Dkt. Nos. 290-91 & 295. Defendants' Motion is predicated upon the following grounds: (1) Plaintiff failed to exhaust available administrative remedies for three of the remaining claims; (2) the claim of medical indifference against Defendant Marlowe is legally insufficient; (3) Plaintiff's failure to protect claims are deficient as a matter of law, as are the claims of personal involvement by the supervisors; (4) the excessive force claim against Defendant Willett is unsupportable; (5) the claims against the individual Defendants in their official capacity are barred by the Eleventh Amendment; and (6) Defendants are entitled to qualified

---

[1] Department of Corrections and Community Supervision.

immunity. Dkt. 290-3, Defs.' Mem. of Law. Plaintiff opposes the Motion. Dkt. Nos. 312-14, 316-17, 319, 321-23, & 325. For the reasons that follow, the Court recommends **granting** the Defendants' Motion in its entirety and that this action be **dismissed**.

## I. PROCEDURAL HISTORY

Plaintiff commenced this lawsuit by filing a Complaint on December 4, 2012. Dkt. No. 1, Compl. The Complaint generally alleges violations of Plaintiff's First, Eighth, and Fourteenth Amendment rights. *Id.* On July 10, 2013, Judge Mordue issued the extensive above-referenced Decision and Order. Dkt. No. 33, Dec. & Order. Thereafter the case progressed through a protracted discovery period, which included numerous Motions seeking injunctive relief, Dkt. Nos. 5, 11, 35, 53, 79, 92, 124, 125, 159, 190, 203, 227, 234, 244, 273, & 285, all of which Motions have been denied, Dkt. Nos. 71, 118, 145, & 200.

Plaintiff was deposed on October 14, 2014 at the Upstate Correctional Facility, located in Malone, New York. Dkt. No. 290-6, Pl.'s Dep. The present Motion was filed on July 20, 2015. Plaintiff was granted multiple extensions to answer the moving papers, *see* Dkt. Nos. 296, 306, 309, and 320, and has submitted multiple submissions, Dkt. Nos. 312-14, 316-17, 319, 321-23, & 325, all of which the Court has reviewed.[2] At the present time the Court considers the Motion fully submitted.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as

---

[2] In this respect the Court **grants** Plaintiff's request to consider additional directives submitted in this action, but will not **grant** any request to incorporate papers filed in another action. Dkt. No. 325.

a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*,

the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., LTD,* 475 U.S. 574, 587 (1986).

### B. The Rule 7.1 Statement of Material Facts

As part of their Motion packet, and in accordance with the District's Local Rules, Defendants filed a Statement of Material Facts. Dkt. No. 290-2, Defs.' Statement of Material Facts ("SMF"). Plaintiff's Response papers, insofar as they constitute a response to Defendants' Motion and SMF, are not in proper form, do not directly respond to the factual assertions of Defendants, and do not cite to appropriate portions of the record. *See* Dkt Nos. 312-14, 316-17, 319, 321-23, & 325. Simply stating that "[P]laintiff denies all arguments made by defense counsel's motion in their entirety" is clearly insufficient. *See* Dkt. No. 317 at ¶ 55.

Under N.D.N.Y.L.R. 7.1(a)(3), any facts set forth in the SMF shall be deemed admitted unless specifically controverted by the opposing party. *See also N.Y. State Teamsters Conf. Pen. & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648 (2d Cir. 2005) (deeming assertions in statement of material facts to be admitted where the non-movant supplied only conclusory denials in its response); FED. R. CIV. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion[.]"). Although a *pro se* litigant is entitled to a liberal

-5-

construction of his filings, *see Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013), his *pro se* status does not relieve him of his obligation to comply with the relevant procedural rules, *see Edwards v. INS*, 59 F.3d 5, 8-9 (2d Cir. 1995).  However, the Second Circuit, acknowledging the court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that the court may in its discretion opt to conduct a review of the entire record even where one of the parties has failed to file a 7.1 statement. *Holtz v. Rockefeller & Co., Inc.*, 258 F. 3d 62, 73 (2d Cir. 2001).  Solely in deference to Plaintiff's *pro se* status, in considering Defendants' request for summary judgment the Court has opted to review the entire record.[3]

### C. Official Capacity Claims

Plaintiff has asserted official capacity claims for money damages under 42 U.S.C. § 1983 against all of the Defendants.  Compl. at p. 3.  Defendants move to dismiss the official capacity claims based upon Eleventh Amendment immunity grounds.  Defs.' Mem. of Law at pp. 22-23.

The immunity granted the states under "the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,* 466 F.3d 232, 236 (2d Cir. 2006) (citing, *inter alia*, *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)).  The Eleventh Amendment bars all money damages claims against state officials acting in their official capacities. *Kentucky v. Graham,* 473 U.S. 159, 169 (1985).  The Eleventh Amendment has been found to bar official capacity claims for money damages against the New York State Department of Corrections and Community Supervision ("DOCCS") officials and parole officers. *See Tolliver v. New York State Corr. Officers*, 2000 WL 1154311, at * 2 (S.D.N.Y. Aug. 14, 2000) ("All of the defendants in this case are state

---

[3] In this regard, the Court, grants Plaintiff's request to consider additional documents submitted.  Dkt. No. 325.

officials because they are employees of the New York State Department of Correctional Services.");
*James v. Suffolk Cnty. Corr. Facility,* 2014 WL 4659300, at *5 (E.D.N.Y. Sept. 17, 2014) (stating that official capacity claims for money damages against parole officers are barred by the Eleventh Amendment). Accordingly, the Court recommends that Plaintiff's § 1983 claims for money damages against Defendants in their official capacities be **dismissed** on Eleventh Amendment grounds.

### D. Plaintiff's Alleged Failure to Exhaust

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (citation omitted).

Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake,* ___ S. Ct. ___, 2016 WL 3128839, at *5 (2106) (mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). All available remedies must be exhausted, yet those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter v. Nussle,* 534 U.S. at 524. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. *Id.*; *Booth v. Churner,* 532 U.S. 731, 741 (2001). Furthermore, section 1997e(a) requires "proper exhaustion"

of available administrative remedies, which means using all steps of an administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

As recently clarified by the Supreme Court, while the exhaustion requirement is mandatory and not subject to judge-created exceptions, the statute itself has its own textual limitations; to wit, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, ___ S. Ct. ___, 2016 WL 3128839, at *7. As noted by the Court, administrative remedies may be unavailable in three potential circumstances: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at *7-8.

In New York State, the administrative remedies consist of a three-step review process. First, a grievance is submitted to the Inmate Grievance Review Committee ("IGRC"), a committee comprised of both inmates and facility employees.[4] N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)-(b). The IGRC reviews and investigates the formal complaints and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Cental Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of these three

---

[4] The IGRC is a five-member body consisting of two voting inmates, two voting staff members, and a non-voting chair (who may be an inmate, staff member or volunteer). N.Y. COMP. CODES R. & REGS tit.7, § 701.4(a).

levels of review may a prisoner seek relief pursuant to § 1983 in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

Exhaustion of administrative remedies is an affirmative defense which must be raised by the defendants. *See Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999). Once raised, as it clearly was in this case,[5] the Defendants bear the burden of proving that the administrative remedies available to Plaintiff were not exhausted prior to the initiation of this civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999). The party opposing the affirmative defense "may delay the ultimate determination as to its validity until trial by showing that there is a genuine issue of material fact to be determined." *Id.* (citations omitted).

Counsel for the Defendants is not taking the position that all of Plaintiff's claims are unexhausted, but merely challenges as unexhausted the claims alleged against Defendant Marlowe for medical indifference, the claims against Rock, Uhler, Zerniak, Otis, Fischer, and Roy for supervisory liability, and the claims against Dishaw, Williams, King, and MacWilliams for allegedly inciting violence against Plaintiff. Defs.' Mem. of Law at p. 6.

Plaintiff's Eighth Amendment claim against Nurse Marlowe is based upon her alleged inadequate treatment of injuries that Plaintiff received on June 11, 2012, as a result of the alleged assault by his cellmate, Inmate Crossdale. Pl.'s Dep. at pp. 99-104. Plaintiff claims that, while he does not recall bleeding, he had injuries to his groin, skull, and chest, but in response to these injuries Nurse Marlowe only gave him Tylenol. *Id.* at p. 104. Plaintiff filed a grievance regarding

---

[5] *See* Answer at ¶ 40.

the fight on June 11, 2012, *see* Dkt. No. 290-21, Jeffery Hale Decl., Ex. C, but there is no indication of any grievance filed regarding lack of medical care. Plaintiff makes no argument that the grievance procedure was unavailable to him. Thus, this claim is properly dismissed for noncompliance with the exhaustion requirements of the PLRA.

With regard to the supervisory claim against Defendants Rock, Uhler, Zerniak, Otis, Fischer, and Roy, however, dismissal of these claims on exhaustion grounds is not warranted at this time. Defendants state that Plaintiff has not completed all steps in the grievance process with regard to the above referenced Defendants. Dkt. No. 290-18, Hale Decl. at ¶¶ 9 & 12. However, by his Declaration, Jeffery Hale, the Assistant Director of the Inmate Grievance Program ("IGP"), notes that Plaintiff did in fact file and exhaust grievances regarding 1) the use of force utilized by Corrections Officer ("C.O.") Willett on June 8, 2010; 2) systemic complaints of assault and conspiracy that Plaintiff believed warranted protective custody; 3) and a claim of failure to protect Plaintiff from a January 7, 2010 attack by his bunkmate, Inmate Francis.[6] *Id*. at ¶¶ 15-18.

Insofar as Plaintiff's supervisory claims relate to underlying conduct that was the subject of a fully exhausted grievance process, a separate grievance detailing the supervisory liability, or specifically naming the supervisors, is not a prerequisite to suit. *See Jones v. Bock*, 549 U.S. 199, 217 (2007) ("[N]othing in the PLRA statute imposes a 'name all the defendants' requirement."); *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2008) ("[W]e are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.").

---

[6] The Court also notes that included in Hale's Declaration is a list of grievances filed by Plaintiff, though not all those grievances were provided to the Court and so the Court has no way to assess what is included in these grievances. Dkt. No. 290-19, Hale Decl., Ex. A.

The same rationale mitigates against dismissal of the claims against Defendants Dishaw, Williams, King, and MacWilliams on exhaustion grounds. Plaintiff claims that these four Defendants actively incited inmates at the correctional facility to attack him, Compl. at p. 13, and that as a direct result of those efforts he was in fact assaulted by his cellmate, Inmate Crossdale, on June 11, 2012.[7] Compl. at p. 47. Grievance UST 50273-12, filed on September 14, 2012, specifically refers to corrections officers committing illegal acts, including staging housing assaults, disclosing inmate's legal cases to other inmates, and seeking out inmates to commit battery on their behalf. Dkt. No. 290-23, Hale Decl., Ex. E at pp. 5 & 7. As to this grievance, Defendants concede that all three steps of the administrative process were satisfied. Hale Decl. at ¶¶ 14 & 18. The fact that Plaintiff did not specifically identify Officers Dishaw, Williams, King, and MacWilliams in the grievance, and rather made general reference to "all correction officers of (9) bldg," Hale Decl., Ex. E at p. 6, does not mean that there was a failure to exhaust. Thus, it is recommended that this aspect of the Defendants' Summary Judgment Motion be **denied.**

### E. Plaintiff's Eighth Amendment Claims

Plaintiff brings several theories of constitutional violations of his Eighth Amendment rights against various Defendants. As noted above, the following Eighth Amendment claim have survived to this stage of the litigation:

1) medical indifference claim against Defendant Marlowe for allegedly failing to

---

[7]At his deposition Plaintiff claimed that Defendants encouraged Inmate Alston, *not* Crossdale, to assault him. Pl.'s Dep. at p. 108. The inconsistency is problematic on several fronts. First, the facts of the Complaint identifying the attacker as Inmate Crossdale have already been set forth with specificity and relied upon by the Defendants and the Court and cannot be changed at this late date. Second, on the issue of exhaustion, the present Complaint was filed on December 4, 2012, and the alleged attack by Inmate Alston did not occur until December 20 or 21, 2012, and thus could not, absent proper amendment, be part of this action. Third, the Alston attack was the subject of a separate law suit filed by Plaintiff, and the allegations in that regard have already been dismissed on exhaustion and substantive grounds. *White v. Williams*, 2016 WL 1237712 , at *5-8, 10-11,(N.D.N.Y. Jan. 11, 2016) adopted by *White v. Williams*, 2016 WL 1239263 (N.D.N.Y. Mar. 29, 2016).

treat injuries sustained during an altercation with his cellmate on June 11, 2012;

2) an excessive force claim against Defendant Willett arising out of an incident occurring on June 8, 2010, wherein Plaintiff alleges he was hit in the mouth and slammed against a wall;

3) a claim that Defendants Oey, Rock, Greenizen, Otis, Nason, Yaddow, Uhler, Lira, Zerniak, and the DOCCS Director of Classification and Movement failed to provide safe conditions of confinement by placing him in a double bunk cell and denying protective custody; and

4) a claim against Defendants Thompson, Nichols, and Rock for failing to protect Plaintiff from being assaulted by his cellmate, Inmate Francis, on January 7, 2010, and against Defendants Demers, C. Smith, King, and Nason for failing to protect Plaintiff from being assaulted by his cellmate, Inmate Crossdale, on June 11, 2012.

Defendants move for summary judgment on each of these claims, which the Court addresses below.

### 1. Medical Indifference Claim Against Defendant Marlowe

As noted above, the Eighth Amendment medical indifference claim against Defendant Marlowe is subject to dismissal due to Plaintiff's failure to exhaust his available administrative remedies. *See supra* Part II.D. A separate basis for dismissal, however, is Plaintiff's failure to satisfy the standards of such an Eighth Amendment claim.

In order to state a claim based upon constitutionally inadequate medical treatment, the Plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). There are two elements to a medical deliberate indifference claim. *Smith v. Carpenter,* 316 F.3d 178, 183-84 (2d Cir. 2003).

*-12-*

The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a "sufficiently culpable state of mind." *Id.* at 184 (citing, *inter alia, Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998)).

The objective prong of the standard is satisfied "when (a) the prisoner was 'actually deprived of adequate medical care,' meaning prison officials acted unreasonably in response to an inmate health risk under the circumstances, and (b) 'the inadequacy in medical care is sufficiently serious.'" *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006). If the "unreasonable care" consists of a failure to provide any treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Smith v. Carpenter*, 316 F.3d at 185-86 (internal quotation marks omitted). When a prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment," the court must focus on the seriousness of the particular risk of harm that resulted from the challenged delay or interruption, "rather than the prisoner's *underlying medical condition* alone[.]" *Id.* at 185 (emphasis in original). The standard for determining when a deprivation or delay in a prisoner's medical need is sufficiently serious "contemplates a condition of urgency that may result in degeneration [of the patient's condition] or extreme pain[.]" *Chance v. Armstrong* 143 F.3d at 702 (internal quotation marks omitted).

The subjective prong of the deliberate indifference test is satisfied when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan,* 511 U.S. 825, 847 (1994). A plaintiff is not required to show that a defendant acted or failed to act "for the very purpose of causing harm or with knowledge that harm will result," but must show that the official was aware of facts from which one could infer that "a substantial risk of serious harm" exists, and that the official drew that inference.

*Id.* at 835 & 837. The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she "knew the underlying facts but believed . . . that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.* at 844. Thus, "[t]he defendant's belief that his conduct poses no risk of serious harm . . . need not be sound so long as it is sincere[,]" and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin v. Goord,* 467 F.3d at 281.

In the present case, Plaintiff testified at his deposition that Nurse Marlowe failed to provide any type of treatment for any of the injuries that he sustained as a result of the June 11, 2012 altercation with his cellmate, Inmate Crossdale. Pl.'s Dep. at pp. 104-05. The medical records produced by Defendants, however, establish that on June 11, 2012, Plaintiff was seen by Nurse Marlowe in the lower holding pen where he was held after having been involved in a cell fight, and no injuries were noted. Dkt. No. 291-1, Nancy Smith Decl., Ex. A at p. 24; Dkt. No. 290-24, Smith Decl. at ¶ 15. Plaintiff was seen every day thereafter for the next seven days by numerous medical staff and did not present any significant complaints. Smith Decl., Ex. A at pp. 25-28. For example, on June 12, Plaintiff complained of headaches, backaches, and nasal congestion, and as a result was prescribed Tylenol. *Id.* at p. 24. On June 13 and 14, Plaintiff did not appear in any acute distress. *Id.* at p. 25. On June 15, 16, 17, and 18, Plaintiff complained of allergies. *Id.* at pp. 25-26. Finally, on June 19, he complained of a foot fungus. *Id.* at p. 27. All of these complaints and ailments were conditions that preexisted the June 11th altercation. *See id.* at pp. 12 (complaints of facial swelling and congestion on March 23, 2012, and of foot fungus on March 24, 2012), 19 (complaints of headaches on May 23, 2012), & 22 (complaints of low back pain and right leg pain on June 3, 2012).

Moreover, even crediting Plaintiff's version of the extent and gravity of his injuries, the

Court finds that such injuries do not amount to a condition of urgency that may produce death, degeneration, or extreme pain.  As alleged in the Complaint, "RN Marlow did not provide medical attention to Plaintiff's back, neck, head, face, or sternum are of chest, no pain medication was provided, no ice pack, no muscle cream[], no cream[] for bruises and cuts, no follow-up treatment recommendation."  Compl. at p. 43. These types of minor, temporary injuries do not constitute serious medical needs as a matter of law.  *See, e.g.*, *Bradley v. Rell*, 703 F. Supp. 2d 109, 121-22 (N.D.N.Y.  2010) (collecting cases and holding that the plaintiff's allegations that he suffered a headache and blurry vision, swelling and bruising around his head, an abrasion to his right lower leg, and psychological problems, were insufficient for a rational fact finder to conclude that his injuries were sufficiently serious to constitute a serious medical need).

In addition to the failure to establish the objective component, Plaintiff has also failed to raise a question of fact that Nurse Marlowe knew that the Plaintiff faced "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it."  *Farmer v. Brennan*, 511 U.S. at 847.  Nurse Marlowe examined Plaintiff shortly after the incident and found no injuries, which was borne out by the medical notations of the non-parties that continued to examine Plaintiff in the days after the event.  Smith Decl., Ex. A at pp. 25-28.  Plaintiff's belief that Nurse Marlowe should have done something different is nothing more than a dispute over the appropriate course of treatment, which does not state an Eighth Amendment claim.  *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986).  Based upon the foregoing, the Court recommends **granting** Defendants' Motion for Summary Judgment with respect to Plaintiff's Eighth Amendment claim against Defendant Marlowe.

## 2. *Excessive Force Claim Against Defendant Willett*

Plaintiff claims that on June 8, 2010, during a cell search, he was subjected to excessive force in violation of the Eighth Amendment. In particular, Plaintiff alleges that while he was in his cell, C.O. Willett punched him through the feed hatch, striking him in the mouth causing him to bleed profusely. Compl. at pp. 8 & 31. Plaintiff alleges that during the ensuing escort from his cell, C.O. Willett attacked him by slamming him up against the wall, injuring his head and hip. *Id.* C.O. Willett asserts that he only used reasonably necessary force. Dkt No. 290-25, Jamie Willett Decl., at ¶ 30.

A videotape of the June 8, 2010 event has been provided to, and viewed by, the Court. Dkt. No. 290-33, Jame Spinner Decl., Ex. A. As there is no allegation that the video has been altered,[8] the Court can rely upon it in making recommendations, even if it conflicts with the representations of a party. *See Scott v. Harris*, 550 U.S. 372, 378-80 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record so that no reasonable jury could believe it, a court should not adopt that version of facts for purposes of ruling on a motion for summary judgment.").

As the video discloses, three guards walked to Plaintiff's cell at 5:50 p.m. on June 8, 2010, and announced a cell search. Spinner Decl., Ex. A. Plaintiff did not respond to the announcement and at 5:51:51, the officers asked Plaintiff to "help us out" and, on three separate occasions, requested Plaintiff to put his hands out of the hatch of the door. *Id.* Plaintiff did not do so. *Id.* At 5:52:46 C.O. Willett, who was at that point positioned in front of the cell door hatch, made a quick movement toward the hatch with his hand. *Id.* This event took less than a second. *Id.* From the

---

[8]At his deposition the Plaintiff acknowledged that the video was fair and accurate. Pl.'s Dep. at p. 75.

angle of the video it is unclear if he reached inside the hatch. *Id.* C.O. Willett denies that he did, Willett Decl. at ¶ 15, but Plaintiff claims otherwise, Pl.'s Dep. at p. 62.

At 5:53 p.m., Plaintiff was asked multiple times, "you coming out or not?" Spinner Decl., Ex. A. He was then instructed to put his hands through the hatch cover, and he finally did so and his hands were cuffed at 5:53:18. *Id.* A few moments later, a fourth officer arrived on the scene; Plaintiff came out of his cell, was placed against the wall, and was searched. *Id.* Plaintiff began to yell during this process. *Id.* At 5:54:06, Plaintiff began to walk down the hallway with the wall to his left side[9] and officers to his right, with one officer holding onto Plaintiff's cuffed hands from behind. *Id.* Approximately ten seconds into the escort Plaintiff can be heard yelling and was then a short distance from the wall. *Id.* Plaintiff was then stopped by the escorting corrections officer and was redirected, or pushed, so that he faced the wall with his chest coming into contact with the structure. *Id.* The video establishes that he did not collide with the wall with any significant force. *Id.* Plaintiff was at the wall for approximately thirty seconds, during which time he had a loud discussion with the corrections officers. *Id.* He can be heard questioning the officers specifically as to why he was hit in the face. *Id.* However, at no time while he is up against the wall was he struck or beaten. *Id.* Plaintiff was then escorted into the holding pen, where he arrived at 5:54:57. *Id.* At the holding pen, Plaintiff requested to be seen by the sergeant. *Id.* Plaintiff stated: "That's some punk-ass shit, hitting me in my face in the pen." *Id.* at 5:55:24.

The Eighth Amendment prohibits "cruel and unusual punishments," U.S. Const. amend. VIII, and bars the "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). A claim of cruel and unusual punishment in violation of the Eighth Amendment has two

---

[9] Plaintiff indicates that he was instructed to keep his left shoulder touching the wall during the escort. Spinner Decl., Ex. A at 5:54:55.

components, one subjective and the other objective. *Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000)

(citing *Hudson v. McMillian*, 503 U.S. 1, 7-8, (1992); *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir.

1999)).  The subjective component of the claim requires a showing that the defendant "had the

necessary level of culpability, shown by actions characterized by 'wantonness'" in light of the

particular circumstances surrounding the challenged conduct. *Blyden v. Mancusi*, 186 F.3d at 262

(quoting *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991)).  In an excessive force case, whether

conduct was "wanton" turns on "whether force was applied in a good-faith effort to maintain or

restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S.

at 7; *see also Blyden v. Mancusi*, 186 F.3d at 262-63.  The objective component of a cruel and

unusual punishment claim focuses on the harm done, but the amount of harm that must be shown

depends on the nature of the claim. *See Hudson v. McMillian*, 503 U.S. at 8.  This objective

component is "contextual and responsive to contemporary standards of decency." *Id.* (internal

quotation marks omitted).  However, a showing of extreme injury is not required when the claim is

that prison officials used excessive force.  In the excessive force context, society's expectations are

different. *Sims v. Artuz*, 230 F.3d at 21.  "When prison officials maliciously and sadistically use

force to cause harm, contemporary standards of decency always are violated . . . [t]his is true

whether or not significant injury is evident." *Id.* (citation omitted).  Thus, "[t]he key inquiry under

*Hudson* and its precedents is whether the alleged conduct involved 'unnecessary and wanton

infliction of pain.'" *Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994) (quoting *Hudson v.

McMillian*, 503 U.S. at 8).  The Second Circuit has recognized that "[n]ot every push or shove, even

if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's

constitutional rights." *Sims v. Artuz*, 230 F.3d at 22.  Moreover, an allegation indicating "a *de*

*minimis* use of force will rarely suffice to state a constitutional claim." *Id.* (citations omitted).

In connection with the use of force depicted on the June 8, 2010 video, it is clear to the Court that the force used to redirect Plaintiff while being escorted in the hallway, which involved no punching, hitting, or other striking, did not violate any constitutional norms. It should be noted that Plaintiff's description of the incident – "I was . . . slammed against (wall) hallway, injuring my head L-side and L-side hip area," Compl. at p. 8 – is completely belied by the video. There is no slamming depicted and Plaintiff's head never makes contact with the wall. The ever so slight use of force to deal with a non-complaint and verbally aggressive inmate is both warranted and constitutional.

With regard to the alleged punch by Willett while Plaintiff was still in his cell, that issue cannot be completely resolved by viewing the video. However, even assuming that, in response to Plaintiff's failure to comply with orders to put his hands out of the hatch, Willett reached into the hatch cover area and struck Plaintiff in the face, it does not follow that such a *de minimis* use of force supports a claim under § 1983. In this regard, the Court notes that Plaintiff's claim that he was bleeding profusely as a result of the strike is again belied by the medical records, the photographs taken immediately after the incident, and the video. Dkt. Nos. 313-1 at p. 55; 314-2 at pp. 1-4;[10] Spinner Decl., Ex. A. The photographs and the video display no blood, the examination by the nurse disclosed no cuts nor swelling, Plaintiff had no difficulty speaking (as clearly shown in the video when he requests to immediately see the sergeant), and Plaintiff's intermittent and subjective complaints of pain are not compelling. Plaintiff even acknowledged at his deposition that he has

---

[10] Plaintiff filed Exhibits in support of his opposition to Defendants' Motion at Docket Numbers 312, 313, and 314. Dkt. Nos. 312-14. Citations to Plaintiff's Exhibits are to the pagination assigned by the Court's Case Management Electronic Case Files ("CM/ECF") System.

been struck in the jaw on several occasions so it is impossible to know whether the pain he claims to have in the jaw was caused by this incident. Pl.'s Dep. at p. 76-77. Reviewing the record as a whole, and drawing all inferences in favor of Plaintiff, the Court finds that the *de minimis* use of force alleged by Plaintiff, and the resultant minor injuries or discomfort, are insufficient as a matter of law to satisfy the objective prong of an excessive force claim. *Bermudez v. Waugh*, 2013 WL 654401 (N.D.N.Y. Feb. 21, 2013) (collecting cases and holding that a tackle and punch by a correction officer that resulted in a red mark or bruise on an inmate did not violate the Eighth Amendment).

Plaintiff has also failed to put forth sufficient evidence to create a question of fact as to the subjective element of his claim against Defendant Willett. Plaintiff alleges, and the video confirms, that Plaintiff did not respond to multiple commands from the corrections officers to present his hands and come out of his cell for purposes of a cell search. Instead, Plaintiff claims that he decided to go to the bathroom. Pl.'s Dep. at p. 61. The alleged use of force, which lasted less than a second, was therefore both in response to Plaintiff's non-compliance and in connection with a legitimate penological purpose.[11] Based upon this, it is the Court's view that no rational jury could find that Defendant Willett used force against Plaintiff in a malicious or sadistic matter, or that the force that was used was for a purpose other than a "good faith effort to . . . restore discipline." *Hudson v. McMillian*, 503 at 6. Accordingly, it is recommended that Plaintiff's Eighth Amendment excessive force claim against Defendant Willett be **dismissed**.

---

[11] Interestingly, while Plaintiff was not compliant with this cell search and seemed to challenge its appropriateness, he, at the same time, acknowledges the importance of cell searches and accuses several prison officials of failing to protect him when they failed to conduct proper cell searches. Compl. at p. 35.

### 3. Denial of Protective Custody

Plaintiff complains that Defendants Oey, Rock, Greenizen, Otis, Nason, Yaddow, Uhler, Lira, Zerniak, and the DOCCS Director of Classification & Movement wrongfully denied his requests to not be placed in a cell with another inmate, but rather be confined in a single cell or in protective custody. In liberally construing the Complaint, it appears that Plaintiff is challenging his conditions of confinement as violative of the United States Constitution because he was not placed in isolation or protective custody and was therefore not housed in reasonably safe confinement. *See* Compl, at pp. 50-53.

In order to state a valid conditions of confinement claim under the Eighth Amendment, a plaintiff must allege that (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. at 297-99 (citation omitted) (cited in *Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir. 1996)).

In *Phelps v. Kapnolas*, 308 F.3d 180 (2d Cir. 2002), the Second Circuit set out in detail the requirements that a plaintiff must prove in order to make out a claim that the conditions of his confinement violated the Eighth Amendment:

> Under the Eighth Amendment, States must not deprive prisoners of their "basic human needs — *e.g.*, food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 32 (citation and internal quotation marks omitted). Nor may prison officials expose prisoners to conditions that "pose an unreasonable risk of serious damage to [their] future health." *Id*. at 35. Ultimately, to establish the objective element of an Eighth Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency. *Id*. at 35-36; *Rhodes*, 452 U.S. 337 at 347.
>
> Concerning the "subjective" requirement, the Supreme Court has explained that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards

*-21-*

an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. *Phelps v. Kapnolas*, 308 F.3d at 185-86.

Plaintiff's claim for denial of protective custody suffers from a serious fatal flaw, namely, he has named parties who had no personal involvement in the decision to house Plaintiff in a double cell or to put him in protective custody. Section 1983 is a statute predicated upon individual liability and personal responsibility, *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976), and where the decision to deny protective custody was not for the individual Defendants to make, there is no liability, *Smart v. Goord*, 441 F. Supp. 2d 631(S.D.N.Y. 2006) (finding that because IPC status had to be determined through the superintendent's hearing process, defendant Smith had no authority to order plaintiff's release or continued confinement, and thus could not be found personally involved in that determination).

As explained in the Defendants' moving papers, the decision to provide protective custody does not lie with the Defendants that have been named by Plaintiff, but by the Deputy Superintendent of Security and the Facility Superintendent who utilize a procedure for risk assessment to determine if an individual is appropriate for double bunking. Dkt. No. 290-13, Reginald Bishop Decl., at ¶¶ 6 & 17-19. Indeed, in determining the proper placement for Plaintiff, a procedure for risk assessment was utilized to determine the most suitable placement for Plaintiff, which included a consideration of factors such as 1) the existence of incarcerated enemies; 2) level of vulnerability; 3) sexual orientation; 4) predatory nature; and 5) mental health level. *Id*. at ¶ 6. All of Plaintiff's complaints and requests regarding his housing arrangements were thoroughly investigated. *Id*. at ¶¶ 7-22. Notably, after his fight with his cellmate in January 2010, Plaintiff did not seek protective custody, and at other times, Plaintiff could not identify a specific threat and

insisted there were no problems with his assigned cellmate. *Id*. at ¶¶ 10-15 & Ex. D. On June 11, 2012, a few days after Plaintiff had an altercation with another cellmate, Plaintiff was interviewed by facility staff and it was determined that there was no need for single cell or protective custody. *Id*. at ¶ 10. Plaintiff was also interviewed again on October 28, 31, and November 1, 2012, resulting in the same conclusion. *Id*. at ¶ 11. An additional interview was conducted on December 12, 2012 by Sergeant Phillips, who is not a Defendant in the action, and who found no evidence to substantiate Plaintiff's safety and security complaints. *Id*. at ¶ 16.

Prison administrators, when making classifications, "need only demonstrate a rational basis for their distinctions." *Hameed v. Coughlin*, 37 F. Supp. 2d 133, 137 (N.D.N.Y. 1999) (quoting *Jones v. North Carolina Prisoners' Union, Inc*., 433 U.S. 119 (1977)). It is clear from the record before the Court that even if Plaintiff had named the correct party in stating his claim, it would nevertheless fail as there has been no showing that, objectively, Plaintiff was exposed to unreasonably unsafe conditions nor that, subjectively, in determining Plaintiff's appropriate cell assignment anyone acted with the requisite wanton state of mind.[12]

### 4.  *Failure to Protect Claims*

Plaintiff asserts that certain Defendants failed to protect him and that such actions violated his Eighth Amendment rights. Specifically, Plaintiff claims that Defendants Thompson, Nichols, and Rock failed to protect him from an assault by his cellmate, Inmate Francis, that occurred on

---

[12] The Court further notes that to the extent Plaintiff's Complaint can be read as asserting a violation stemming from the fact that he was double bunked, such claim would also fail based upon the record before the Court. As an initial matter, double-bunking is not unconstitutional *per se*. *Rhodes v. Chapman*, 452 U.S. 337, 347-50 (1981). Furthermore, double-bunking is but one condition which, combined with other conditions could have the effect of aggravating the conditions of incarceration toward a constitutional violation when such combined conditions "have a mutually enforcing effect that produces the deprivation of a single identifiable human need such as food, warmth or exercise." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Wilson v. Seiter*, 501 U.S. at 304).

January 7, 2010, and Defendants Demers, C. Smith, King, and Nason failed to protect him from an assault by his cellmate, Inmate Crossdale, that occurred on June 11, 2012.

In order to establish an Eighth Amendment claim for failure to protect, a plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials acted with deliberate indifference to that risk and the inmate's safety. *Farmer v. Brennan,* 511 U.S. 825, 836 (1994). The plaintiff must show that prison officials *actually knew of and disregarded* an excessive risk of harm to the inmate's health and safety. *Id.* at 837. The defendant must be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists and the defendant must also draw that inference. *Id.*

The failure of corrections officers to employ reasonable measures to protect an inmate from violence by other inmates may rise to the level of an Eighth Amendment violation. *See Ayers v. Coughlin,* 780 F.2d 205, 209 (2d Cir. 1985) (citing *United States v. Bailey,* 444 U.S. 394, 423 (1980)). "Reckless disregard" of a plaintiff's right to be free from attacks by other inmates may be shown by the existence of "a pervasive risk of harm to inmates from other prisoners and a failure by prison officials to reasonably respond to that risk." *Knowles v. New York City Dep't of Corr.,* 904 F. Supp. 217, 221 (S.D.N.Y. 1995) (citing *Rucco v. Howard,* 1993 WL 299296, at *4 (S.D.N.Y. Aug. 4, 1993); *Martin v. White,* 742 F.2d 469, 474 (8th Cir. 1984)).

An isolated omission by corrections officers generally does not support a claim for deliberate indifference absent circumstances involving evil intent, recklessness, or deliberate indifference. *Coronado v. Goord,* 2000 WL 1372834, at *4 (S.D.N.Y. Sept. 25, 2000) (citing *Ayers v. Coughlin,* 780 F.2d at 209). Plaintiff may allege a constitutional claim by alleging that the substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials

in the past, and that the officials being sued were exposed to information concerning the risk and thus, must have known about it. *Id*. (citing *Farmer,* 511 U.S. at 842-43).

With this standard, the Court addresses the two subject incidents raised in this action.

### a. January 7, 2010 Altercation

On January 7, 2010, Plaintiff was housed in a special housing unit ("SHU") with Inmate Ricardo Francis. Pl.'s Dep. at p. 28. During the first seven days while housed with Francic there had been no physical altercation between the two. *Id.* at p. 29. There was, however, according to Plaintiff, unspoken tension. *Id.* at p. 36.

According to the Inmate Grievance that Plaintiff filed, he had originally requested that he be housed with an inmate of his choosing so that there would be no risk of altercation, but that request was denied. Dkt. No. 314-2, at p. 33, Inmate Grievance, dated Jan. 7, 2010. After Mr. Francis was placed inside the cell with Mr. White, the Plaintiff immediately spoke with Defendants Sergeant Thompson and Officer Nichols and notified them that he and his cellmate were not compatible. *Id.* Next, on January 6, 2010, Mr. White claims that he again notified the Sergeant of his concerns and asked to be moved out or have "an inmate of my choosing housed with me." *Id*. That request, according to Plaintiff, was denied. *Id.*

In his Inmate Grievance, Plaintiff asserted that on January 7, 2010, he notified Sergeant Thomas that his cellmate threatened him with a weapon and that no cell search was conducted. *Id*. Around that same time, he wrote to the Superintendent's office seeking help. *Id.* Attached to Plaintiff's Opposition papers is the correspondence, dated January 6, 2010, that was written to Superintendent Rock and Deputy Superintendent Uhler. Dkt. No. 314-2 at p. 32. Of note is the fact that the letter was marked received by the Superintendent's Office on January 7, 2010, at 11:26 a.m.,

approximately three hours **after** the fight with Plaintiff's cellmate had already occurred.  *See id.* at

p. 35 (noting the incident time was 8:25 a.m.).  Second, no where in the letter to Superintendent

Rock is there any mention of a weapon, which according to the Plaintiff's deposition testimony was

discovered days earlier.[13]  Rather, the letter notes that even though the cellmates have been assessed

to be compatible, they have been involved in "debates, arguments and differences" that bring them

to the brink of fighting.  *Id.* at p. 32.  White further noted in his letter that the area Sergeant is aware

of his "alleged history" and continues to avoid using his discretion and remove the cellmate.  *Id.*

On January 7, 2010, two separate fights occurred between the Plaintiff and his cellmate.

Plaintiff maintains that immediately after he complained to the Sergeant about Francis and as the

Sergeant walked away, Plaintiff was attacked while still at the door of the cell and was hit eight-to-

ten times and cut on his back.  *Id.* at pp. 25 & 32.  A half-hour later, during the collection of meals

by Officer Getman, a second fight ensued for approximately three minutes.  *Id.* at p. 40.  According

to Officer Getman, who is not a named defendant, he saw Plaintiff staring at his cellmate, and then

Plaintiff refused a direct order to return his meal tray.  Bishop Decl., Ex. 3 at p. 3.  Plaintiff, who

Getman describes as the aggressor, began to punch and fight his cellmate.  *Id.*  With regard to the

alleged shank, Plaintiff did not see one after the fight and the prison officials ultimately decided that

there was no weapon.  Pl.'s Dep. at p. 42; *see also* Dkt. No. 314-2 at p. 43 (as noted as part of the

Lt. Rogers Memorandum, Officer Getman never saw a weapon during the fight, and after the

---

[13] In his deposition, Plaintiff testified that four days before the January 7th fight, he discovered that his cellmate possessed a weapon – a piece of metal that was shorter than a pen.  Pl.'s Dep. at p. 30.  Plaintiff further testified that he advised Defendant Thompson at least six times prior to the altercation that his cellmate had a weapon, but no action was taken or cell search was conducted.  *Id.* at p. 51.  Similarly, Plaintiff stated that he notified Defendant Nichols at least three times of his cellmate's aggression towards him, but Nichols refused to separate them.  *Id.* at 56-57.  Plaintiff further testified that the custom of the facility was not to separate cellmates in SHU until there is a fight, or an inmate threatens to commit suicide, or an inmate refuses to return a meal tray.  *Id.* at pp. 51-54.

incident Inmate Francis was searched, as was the cell, and no weapon was found).

In this particular case, it is clear to the Court that Plaintiff was constantly complaining about his cellmate because of his long-standing desire to be housed by himself. According to a Memorandum written after staff investigated the altercation, upon Plaintiff's complaints regarding the facility's failure to provide him with "safety and security," it was explained to Plaintiff that "this is a Double-cell facility and he is designated a double cell eligible inmate." Dkt. No. 314-2 at p. 43. The Memorandum further concluded that,

> [a]fter investigating these claims it was evident that inmate White has been complaining about every bunkmate he has been given in approximately the last year. I believe his issue has more to do with the departments policy with double celling and not any misconduct by staff. I find that Sgt. Thompson was acting properly within the scope of his duties and has continually attempted to find some (sic) that is compatible with inmate White. Inmate White's refusal to adapt to his double cell status is the underlying issue.

*Id.*

While there may potentially be a question of fact as to the notice provided to Defendant Thompson in regard to the potential dangers posed to Plaintiff and whether, subjectively, Thompson could have either perceived, or reasonably should have appreciated but disregarded such danger,[14] Plaintiff's Eighth Amendment claim nevertheless fails under the objective test of the Eighth Amendment because the extent of the risk to which the Plaintiff was exposed was not sufficiently serious. In order to meet this element the Plaintiff must establish that he was incarcerated under conditions

---

[14] Plaintiff claims to have put Sergeant Thompson on specific notice that his cellmate had a weapon and posed a danger to him yet no action was taken. Despite the serious infirmities that exist as to this claim – namely, that no such weapon was ever found nor was it ever mentioned in the letter to the Superintendent asking for aid – the Court would not be in a position to make a credibility determination. Thus, if Plaintiff's allegations were accepted, a reasonable fact finder could conclude that, in connection with the subjective prong, Defendant Thompson was on notice prior to January 7, 2010, as to the potential dangers posed to Plaintiff and could have either perceived, or reasonably should have appreciated, a risk of harm to the Plaintiff. The Court need not delve into this aspect of Plaintiff's Eighth Amendment claim because, as explained herein, Plaintiff cannot satisfy the objective prong of his failure to protect claim.

imposing a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. at 834. To sustain a failure to protect claim under this standard, an inmate must establish that he actually suffered an injury. *Newman v. Duncan*, 2007 WL 2847304 at *5 (N.D.N.Y. Sept. 26, 2007). Here while Mr. White sustained an injury, the nature of that injury can best be described as *de minimus*, consisting of a scratch to his back and arm, three pinpoint abrasions and facial swelling, together with jaw pain. *See* Dkt. No. 314-2, at p. 34, Inmate Injury Report. While Plaintiff testified at his deposition that he was cut and bleeding, he acknowledged that he received only routine medical care for this injury. Pl.'s Dep. at p. 58. Such an injury undermines his Eighth Amendment claim. *Parker v. Peek-Co*, 2009 WL 211371, at *6 (N.D.N.Y. Jan. 27, 2009) (concluding that *de minimis* injury resulting from a fight negates a finding that defendant exposed him to a substantial risk of serious harm)**;** *Johnson v. Lynn-Caron*, 2013 WL 5465594 (N.D.N.Y. Sept. 30, 2013). Because Plaintiff's *de minimis* injuries clearly negate the seriousness of the risk of harm allegedly posed to him, it is recommended that summary judgment be **granted** on his claim of failure to protect against Defendants Thompson, Nicols, and Rock.

### b. June 11, 2012 Incident

On June 11, 2012, Plaintiff was housed in SHU at the facility with Inmate Crossdale. Pl.'s Dep. at p. 79. Plaintiff claims that he notified Defendants King and Counselor Nason that he was in imminent danger and therefore entitled to protective custody. *Id.* at 80. In particular, Plaintiff claims that the cellmate was a danger to him because Mr. Crossdale did not want to be inside the cell. *Id.* Counselor Nason indicated that she would notify the Sergeant. *Id*. at pp. 80-81. Plaintiff also advised Defendant Officer C. Smith, and then told Defendant Officer Demers that there was a gang related threat, *id.* at p. 82, even though Plaintiff was not a member of a gang. Plaintiff was

housed with Inmate Crossdale for less than six hours at the time that a fight ensued. *Id.* at pp. 84 & 90. According to Plaintiff, Crossdale hit him in the head three to four times, and then Plaintiff choked Crossdale for four-to-five minutes. *Id.* at pp. 99-100. Plaintiff was ordered to let go of Crossdale, but he refused, and ultimately Crossdale went into the recreation pen. *Id.* at pp. 101-02.

I note initially that this Eighth Amendment claim suffers from the same deficiency in the objective prong as the one analyze above in that, even according to Plaintiff's version, he was punched in the in the head only three-to-four times, and as noted above, the claimed injuries are belied by the record. *See supra* Part II.E.1. Furthermore, I note that Plaintiff's generalized complaints provided to Defendants Demers, Smith, King, and Nason did not sufficiently alert them to any reasonable danger which would render their refusal to take Plaintiff out of the cell a violation of the Eighth Amendment. Indeed, these Defendants were entitled to rely upon the Department of Corrections screening process wherein Plaintiff had been cleared to be housed with this particular inmate and had only been with him for eight hours when he started to complain about his housing situation and there was no history of fighting between the two. An inmate cannot effectively overrule the facility's decision to double bunk with a particular inmate by simply announcing that they are not compatible. *See Harris v. Aidala*, 271 F. App'x 34, 2008 WL 833073 (2d Cir. 2008) (upholding the grant of summary judgment to defendants on the grounds that bunkmates were screened pursuant to DOCCS criteria and the named defendants had no authority over inmate cell assignments); *cf. Quezada v. Poole*, 2011 WL 4368450, at *6 (N.D.N.Y. Sept. 19, 2011) (holding that prison guards were not required to give credence to an inmate's medical paperwork where their own facility had evaluated him and concluded that a different form of treatment was more appropriate). Thus, the Plaintiff has not set forth sufficient facts to satisfy his Eighth Amendment

failure to protect claim. Accordingly, the claims against Defendants Demers, Smith, King, and Nason should be **dismissed**.

## F. Claims for Inciting Violence Against Plaintiff

Plaintiff alleges that Defendants Dishaw, Williams, King, and MacWilliams incited and encouraged other inmates to be violent toward Plaintiff. According to Plaintiff, those corrections officers relayed to other inmates that Plaintiff was a "rat," disclosed aspects of his criminal case, stated that he filed incessant grievances against officers, and that the consensus opinion of the officers was that he was an "asshole." Pl.'s Dep. at p. 101. As specifically set forth in the Complaint, these Defendants' "verbal encouraging and enticing ultimately resulted in the battery assault committed against Plaintiff (on June 11, 2012)." Compl. at p. 47. The June 11, 2012 incident, as noted above, involved Inmate Crossdale. As to Officer King, however, the Plaintiff testified at his deposition that he was not aware of specific inmates attacking him because of anything that Officer King said. Pl.'s Dep. at p. 109. With regard to Officer MacWilliams, Plaintiff also could not specifically cite one inmate that was incited to violence, "because I don't know what he did." *Id.* at p. 110. Based upon this lack of admissible proof, the claims against Officers MacWilliams and King should be **dismissed**.

With regard Officer Williams, she is alleged to have provided gratuities of tobacco or to have threatened disciplinary tickets in order to incite inmate violence. *Id.* at pp. 107- 08. Plaintiff further claims that this resulted in Inmates Williams and Allston hitting Plaintiff, but he was unsure about whether Inmate Crossdale was encouraged in this fashion. *Id.* at p. 108. A similar allegation is made against Correction Officer Dishaw, who is said to have "literally proposed gratuities in order for him to be physically hurt." *Id*. at p. 106. "He was always at the cell door antagonizing me,

threatening to make something happen." *Id.* As a result of this, he claims that Inmates Williams and Allston assaulted him, but he does not mention the altercation with Crossdale, which is the basis of the present Complaint. *Id.* at p. 107. Further, he notes that he never specifically saw Officer Dishaw speak to inmate Allston or Williams. *Id.* at p. 110. Rather, he surmises that there was some collusion, because prior to the second time he fought his then-cellmate Allston, his cellmate mentioned Dishaw's name. *Id.* at p. 111. As Plaintiff notes, however, the situation with Inmate Allston forms the basis of a separate civil complaint, *White v. Williams*, 9:12-cv-1892 (N.D.N.Y. filed Dec. 28, 2012), that was dismissed by Judge Sharpe in March of this year, when he accepted Magistrate Judge Baxter's report and recommendation. 9:12-cv-1892, Dkt. No. 382. That decision is not subject to re-litigation in this action.

Threats alone do not satisfy the Eighth Amendment standard. Thus, it is imperative for Plaintiff to establish not only that a specific Defendant incited a specific inmate to attack him, but also that the physical attack actually took place. The only attack specifically alleged in the Complaint is the attack by Inmate Crossdale. However, there is no admissible proof connecting any statements by the Defendant correctional officers to that attack and Plaintiff has effectively conceded as much in his deposition. His claims regarding other inmates, in addition to being outside the contours of his Complaint, are wholly speculative and insufficient to defeat summary judgment. *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460 (S.D.N.Y. 1998) (noting that claims of conspiracy that are vague and provide no basis in fact must be dismissed); *O'Dell v. Bill*, 2015 WL 710544, at *33 (N.D.N.Y. Feb. 18, 2015) (granting summary judgment to defendant where the plaintiff had alleged a conspiracy to assault him by a member of the staff, but plaintiff conceded that he had no knowledge of exact conversation between defendant and his alleged attackers). Accordingly, I

recommend **dismissing** the claims asserted against Defendants Dishaw, Williams, King, and MacWilliams for allegedly encouraging or inciting inmate violence against Plaintiff.

### G. Failure to Supervise Claims.

As previously noted by Judge Mordue "scattered throughout plaintiffs ninety-four page complaint are multiple allegations against Defendants Rock, Uhler, Zerniak, Otis, Fisher, and Roy, that they failed to supervise or adequately train their staff, or acted with deliberate indifference to known wrongdoing by their staff, and failed to remedy the wrongdoing." Dkt. No. 33 at p. 28. As detailed above, however, Plaintiff has failed to establish, in opposition to a well-supported summary judgment motion, an underlying constitutional violation. Where there is no underlying violation, there can be no liability for failure to train or supervise. *See Aretakis v. Durivage*, 2009 WL 249781, at *30, (N.D.N.Y. Feb. 3, 2009). Also absent from the Plaintiff's submissions is admissible evidence of personal involvement by the supervisors in any of the conduct that allegedly harmed the Plaintiff, which omission is also fatal to the supervisory claims. *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987). Thus the failure to supervise claims should also be **dismissed**.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that Plaintiff's Letter-Motion seeking consideration of additional records in further support of his opposition (Dkt. No. 325) is **granted** to the extent that the Court reviewed the filings; and it is further

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 290) be **GRANTED** in its entirety, and that this action be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   June 22, 2016
        Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge